[Civ. No. 32248. First Dist., Div. Two. Sept. 24, 1974.]

LYNN LOGAN et al., Plaintiffs and Appellants, v.
JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY et al.,
Defendants and Respondents.

**COUNSEL**

Christenson, Hedemark & Langum and Bruce J. Christenson for Plaintiffs and Appellants.

Bohnett & Bohnett and Michael C. Weber for Defendants and Respondents.

**OPINION**

**TAYLOR, P. J.**—Beneficiaries of deceased insured appeal from a judgment in favor of the insurer after the trial court held that as to the accidental death benefit, the intoxication and felony exclusions of the policy were valid. The main question on appeal is whether the insurer was entitled to deny coverage on the basis of these two exclusions that had never been communicated to the decedent. We have concluded that the judgment must be reversed as under the circumstances of the instant case, the exclusions were not within the reasonable expectation of the insured in his purchase of a life insurance policy.

The undisputed facts are as follows: In March 1970, the insured dece-

dent, Larry L. Logan, was a member of the United States Navy. On March 18, Logan went to the base insurance office to purchase life insurance. An agent for John Hancock Mutual Life assisted Logan in selecting a policy providing benefits of $10,000 ordinary life and $10,000 accidental death benefits with the usual double indemnity provision. After Logan completed an application, the agent advised him that he would have coverage from the time he returned a military allotment voucher,[1] but that he would not receive the actual policy until the application was accepted and the policy mailed by the home office. The agent indicated that when the policy arrived, he would go over it and explain the details. The agent advised Logan that if he were killed in a combat zone or due to an act of war (Exclusions 5 and 6), he would lose the accidental death benefits, but did not apprise Logan of the other five standard exclusions of the policy.[2] Among the standard exclusions not called to Logan's attention were the two here in issue pertaining to participation in a felony and intoxication (Exclusions 3 and 7). Logan was killed on April 11, 1970, 23 days after completing the application and prior to the arrival of his policy, when the motorcycle he was driving while intoxicated collided with a car; the driver of the car was also injured.

After the insurer paid the life benefits but refused to also pay the accidental death benefits, the beneficiaries filed this action. The court found that: 1) the insured's death was the result of participation in a felony drunk driving with injuries (Veh. Code, § 23101) and the entry into the body of

---

[1]This allotment voucher authorized the Navy to make premium payments through regular payroll deductions sent directly to the insurance company. Logan returned the voucher two or three days after filling out the application.

[2]The seven exceptions and exclusions to the accidental death coverage were listed in the policy under the heading of "Exceptions and Exclusions" as follows: "No benefit will be payable under this Provision if the Insured's death results, directly or indirectly, or wholly or partially, from

"(1) Any infection or bodily or mental infirmity or disease existing before or commencing after the accidental injury, except a disease or infection as provided in the definition of 'accidental death';

"(2) Intentionally self-inflicted injury while sane, or self-inflicted injury while insane;

"(3) *Participation in* an assault, or *a felony,* or a riot;

"(4) Travel, flight or descent in or from any kind of aircraft which is being operated for any training purpose, or which the Insured is aboard to perform specific duties whether applicable to the operation of the aircraft or not;

"(5) War, whether declared or undeclared;

"(6) Service in an armed force of any international organizauon, or any country or combination of countries at war whether declared or undeclared;

"(7) *The entry into the body, in any manner or nature whatever, and whether due to a voluntary, involuntary or* other act of the Insured, *of any intoxicant,* excitant or hallucinogen, or of any narcotic or other drug, or of any gas, poison or poisonous substance." (Italics supplied.)

intoxicants; 2) the insured had never seen the policy; and 3) the policy was a contract of adhesion. However, the court concluded that the felony and intoxication exclusions were valid conditions subsequent as the insured could not reasonably expect coverage for accidental death while driving in an intoxicated condition.

■ Preliminarily, we turn to the insurer's argument that there was no contract of insurance in existence at the time of the insured's death. The insurer asserts that: 1) the insured had made no actual payment of money;[3] 2) the insured could have rejected the policy when it arrived if he was not satisfied; and 3) the application did not call for the policy to become effective until 20 days *after* the insured's death. Insurer maintains that the payment of the life insurance benefit was a generous gratuity on the basis of its agent's oral promise of coverage and that it should be able to rely on its policy, as issued.

These contentions of the insurer are entirely without merit. The record indicates that the parties stipulated that the policy was in full force and effect at the time of death and the trial court specifically found that the method of premium payment was appropriate for this type of policy. Further, Insurance Code section 10115, set forth below,[4] mandates that the insured receive coverage from the date the application is signed. The insurer asserts that the statute contemplates only that the parties are to be bound by the policy, *as it is to be issued.* However, the Insurance Code expressly provides that the insured has the same "rights" if he dies before issuance of the policy as he does if he dies afterwards (Ins. Code, § 10115). In *Steven* v. *Fidelity & Casualty Co.,* 58 Cal.2d 862 [27 Cal.Rptr. 172, 377 P.2d 284], our Supreme Court held that in the case of standardized insurance contracts sold from vending machines, an insurer could not rely on limitations to coverage which the insured could reasonably expect unless those limitations were plainly and clearly brought to the attention of the insured. It follows that if the insurer's failure to bring exclusions in an issued policy to the attention of the insured precludes reliance upon those exclusions to deny coverage, the insurer could not rely on uncommunicated exclusions in a policy not yet issued.

---

[3]The contention is based on the finding that no money changed hands between the agent and the insured. The finding is superfluous as payment was made via the military allotment voucher.

[4]This section provides, in pertinent part, that if "the person to be insured dies on or after the date of the application . . . but before such policy is issued and delivered, the insurer shall pay such amount as would have been due under the terms of the policy in the same manner and subject to the *same rights,* conditions and defenses *as if such policy had been issued* and delivered on the date the application was signed by the applicant." (Italics supplied.)

■ The beneficiaries, relying on *Steven* and its progeny, argue that the exclusionary clauses here in issue are invalid as a matter of law as the undisputed facts indicate that they were not brought to the attention of the insured before his death. In *Steven,* the court noted (at p. 879) that: "In standardized [adhesion] contracts, such as the instant one, which are made by parties of unequal bargaining strength, the California courts have long been disinclined to effectuate clauses of limitation of liability which are unclear, *unexpected,* inconspicuous or unconscionable." (Italics added.) In *Gray* v. *Zurich Insurance Co.,* 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168], the court held that in the field of insurance contracts, when the policy does not clearly define the application of exclusions to the basic coverage the insured could *reasonably expect,* courts will not relieve the insurer of liability on the basis of those exclusions.

In *Young* v. *Metropolitan Life Ins. Co.,* 272 Cal.App.2d 453 [77 Cal. Rptr. 382, 78 Cal.Rptr. 568], the court held that after purchase of a life insurance policy with accidental death benefits and payment of the full premium for one year, the insured can reasonably expect complete and immediate coverage. Thus, a written conditional receipt limiting liability to accidental death benefits only until after the insured has a physical examination, is invalid unless the limitations are called to the attention of the insured at the time of purchase. The court stated that "It is now firmly settled that insurance contracts are contracts of adhesion between parties not equally situated. [Citations.] Consequently, the insurer, as the dominant and expert party in the field, must not only draft such contracts in unambiguous terms but *must bring to the attention of the insured all provisions and conditions which create exceptions or limitations on the coverage.* [Citation.]" (Pp. 460-461; italics supplied.)[5] The court reversed a judgment for the insurer and ordered a new trial because there was no evidence that the condition relied upon by the insurer was ever called to the attention of the insured.

*Young, supra,* is particularly pertinent because there, as here, the insured died *after* the signing of the application *but before* the policy was issued. The insurer, however, contends that the physical condition limitation involved in *Young, supra,* was a condition precedent, going to the essence of the contract, whereas here, the felony and intoxication exclusions were conditions subsequent, as the trial court found. ■ We, however, find more persuasive and accurate the analysis that the "use of the

---

[5] After a retrial, the court affirmed a jury verdict for the insurer because the insurance agent testified that he had advised the insured of the pre-physical limitation (*Young* v. *Metropolitan Life Ins. Company,* 20 Cal.App.3d 777 [98 Cal.Rptr. 77]).

terms 'condition precedent' and 'condition subsequent' in construction of insurance contracts has served only to breed confusion and difficulty." When properly analyzed, all conditions are conditions precedent and the only purpose of the distinction is to allocate the burden of proof between the parties. (Harnett & Thornton, *The Insurance Condition Subsequent: A Needle In A Semantic Haystack,* 17 Fordham L.Rev. 220, 237-242.)

The insurer also claims that it is unrealistic and unworkable to require agents to inform prospective insureds of all exclusions and exceptions that will be in a policy when issued. The insurer correctly points out that occasionally information subsequently discovered about the prospective insured requires additional exclusions and limitations. While this argument may have some merit under other circumstances, it has no application to the instant case. The felony and intoxication exclusions, like the war and combat exclusions, were a part of the standard exclusions[6] included in every policy issued. From the fact that the agent orally identified the war and combat exclusions and made no mention of others, the insured could justifiably imply that these two were the sole exclusions in the policy. All seven standard exclusions to the accidental death benefit were a part of the same section of the policy; sample policies identical to the one issued were in the possession of the agent. It would have been an easy matter to have the insured scan the exceptions before signing the application.

Insurer also maintains that *Steven, Gray* and *Young* merely hold that ambiguous exclusionary clauses in written insurance policies and conditional receipts will be interpreted against the insurance company in light of the reasonable expectation of the insured. Insurer argues that in the instant case, the exclusions were clearly, conspicuously and unambiguously contained in the policy, and that consequently *Steven, Gray* and *Young* are not here applicable.

The primary concern of the courts in *Steven, Gray* and *Young,* however, has not been with ambiguity per se, but rather with the lack of notice that results from the ambiguity. As the court in *Steven* stated: "We do not see how such verbal vacuity can serve as *clear and plain notice* to the insured of noncoverage." (58 Cal.2d 872; italics added.) Likewise here, a clear, conspicuous and unambiguous exclusion contained in a policy the insured had never seen can provide no notice whatever, let alone the "clear and plain notice" required by *Steven.* We cannot agree either with the

---

[6]The trial court apparently overlooked this aspect of the matter as it found that: "It was reasonable that the agent would advise the insured of an exclusion that covered combat death since this would be especially significant to the insured since he was a serviceman."

insurer that the court in *Steven* intended to limit its holding to the facts of that case or with the beneficiaries that all uncommunicated exclusions are invalid as a matter of law. ■ We glean from *Steven* and its progeny a general principle of public policy as follows: In the case of standardized insurance contracts, exceptions and limitations on coverage that the insured could *reasonably expect,*[7] *must be called to his attention, clearly and plainly,* before the exclusions will be interpreted to relieve the insurer of liability or performance.

■ We must, then, determine the validity of the instant felony and intoxication clauses in light of the *insured's reasonable expectation of coverage (Gray* v. *Zurich Insurance Co., supra).* In applying this test, "the courts in the field of insurance contracts have tended to require that the insurer render the *basic insurance protection which it has held out to the insured." (Gray, supra,* at p. 280; italics supplied.) Thus, in *Steven,* the purchaser of round trip flight insurance on a scheduled airline could reasonably expect to be covered for the whole trip, including necessary substituted transportation, even if it involved flying in an unscheduled single engine airplane. In *Gray,* the purchaser of personal liability insurance could reasonably expect to be defended against an action for intentional bodily injury, *notwithstanding the public policy against indemnification for liability.* Similarly here, despite the public policy against *indemnification* for felonious drunk driving, the insured, particularly after he was notified *only* of the exclusions of war and combat, could reasonably have expected coverage for his accidental death under the circumstances in this case.

The basic coverages held out to the insured here were the life insurance and the payment of benefits in case of accidental death. At the time of purchase, the insured was shown a document describing the policy as providing $10,000 for natural death and $20,000 for accidental death, without any indication of exclusions or exceptions to the coverage. This document, along with the oral representations of the agent, tended to create a false impression of the coverage actually provided. The insured was told that the accidental death provision would afford coverage in the event he was killed in a motorcycle accident and that the only way he would not be covered would be "if there was something in the application to make him uninsurable." As previously indicated, while the insured

---

[7]*Barker* v. *California-Western States Life Ins. Co.,* 252 Cal.App.2d 768 [61 Cal. Rptr. 595], cited by the insurer, wherein the validity of the two exclusions here in issue was upheld, is not apposite here. In *Barker,* the accidental death benefits were negotiated by the group insurer and had not yet been communicated to the insured. Thus, he had no reasonable expectations of coverage.

■

was informed of the standard combat and war exclusions, he was not told of the other standard exclusions, including those for a felony and intoxication. Thus, a reasonable person of the age and experience of the insured here would reasonably have concluded that there would be no other exclusions, except war and combat.

Unless so informed, an insured would not reasonably expect a loss of his accidental death coverage, merely because his death might occur in an accident where he was intoxicated and subjected himself to the felonious charge of drunken driving with injury. Nor, without being told, would he reasonably expect to lose coverage simply because ingestion of alcohol was a factor contributing to his death. ▪ We hold that where a policy has not yet been issued, all standard exclusions to the insurance coverage, which the insured would not reasonably expect, must be called clearly and plainly to the attention of the insured if the insurer is to be permitted to rely on these exclusions to avoid payment of benefits under the policy.

▪ The trial court explicitly found that the insured's death was accidental. We conclude that since under the peculiar facts of this case the insured could reasonably have expected the accidental death benefits coverage and the insurer did nothing to dispel this expectation of basic coverage, the judgment is reversed, with instructions to the trial court to enter judgment in favor of the beneficiaries.[8]

Kane, J., and Rouse, J., concurred.

A petition for a rehearing was denied October 24, 1974, and respondents' petition for a hearing by the Supreme Court was denied November 21, 1974.

---

[8]We do not agree with the insurer's additional contention that the matter should be reversed only for a new trial as it is possible that additional evidence may be adduced that could result in a judgment for the insurer, as was the case in the second *Young* case. In that case, there was no evidence one way or the other on the critical issue of notice to the insured. Here, there are specific findings of fact by the trial court on the question of notice and all other major elements of the case.