[Civ. No. 41512. First Dist., Div. Three. Nov. 22, 1978.]

CLIFFORD N. JONES, as Guardian, etc., Plaintiff and Respondent, v. CROWN LIFE INSURANCE COMPANY, Defendant and Appellant.

**COUNSEL**

Hill, Corbett & Roberts and Donald B. Roberts for Defendant and Appellant.

Schafer & Cochran and Philip M. Schafer for Plaintiff and Respondent.

**OPINION**

**WHITE, P. J.**—Defendant and Appellant Crown Life Insurance Company appeals from a judgment entered upon a jury verdict in favor of plaintiff and respondent Clifford Jones, as guardian of the estate of John Gabriel Jones.

■ We do not agree with appellant's primary contention that the trial court erred in instructing the jury in accordance with the principles pertaining to adhesion contracts. ■ The group life and health insurance policy herein issued by appellant is a contract of adhesion. (*Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 882 [27 Cal.Rptr. 172, 377 P.2d 284].) ■ Further, we disagree with appellant's contention that as a matter of law the policy's limitation/exclusion upon the accidental death benefits barred recovery because the insured was under the influence of alcoholic beverage at the time of his accidental death. (See *Logan* v. *John Hancock Mut. Life Ins. Co.* (1974) 41 Cal.App.3d 988, 996 [116 Cal.Rptr. 528].) Accordingly, we affirm the judgment.

The basic facts are not in dispute.

Part of the duties of Glenn Wallace, the personnel manager and safety director of Simonson Lumber Company, was to recommend to Mr. Simonson the insurance coverage that should be offered to the employees of Simonson Lumber Company. Wallace reviewed the coverage and costs of insurance offered by seven different companies. Wallace could not negotiate the terms of the different policies, but he could and did select one of the policies (defendant's policy) that afforded the most coverage at the least cost. The defendant's group life and health insurance policy cost $290,000. An individual employee would pay between $4 and $15 per month for coverage, depending on whether he was single or married. An employee of Simonson Lumber Company could decide whether he wanted to participate in this group life and health insurance program.

At the time of his death Winfred Wayne Jones was an employee at Simonson Lumber Company. He had chosen to participate in the life and health insurance program and had named his son, John Gabriel Jones, as beneficiary.

The policy issued by defendant provides for basic life insurance benefits in the amount of $5,000, which amount appellant paid to plaintiff. However, appellant refused to pay the additional policy benefit of $5,000 for accidental death relying on the limitation/exclusion policy provision which reads as follows: "No amount shall be payable under this benefit for any loss which is contributed to by, or results from or is caused directly or indirectly by . . . [¶] 2. injury incurred to which a contributing cause is the employee's commission of, or attempt to commit, an assault or any criminal offense."

The employees were not given a copy of the policy, but were given notice that a copy was in the employer's office if they wished to read it. The employees were provided with a booklet that described the benefits afforded under the policy. This booklet was written by Wallace and the legal staff of defendant. However, any part that was written by Wallace had to be approved by defendant. The booklet omitted any reference to the limitation/exclusion in question.

Winfred Jones, at the time of his death on December 26, 1974, was 18 years old and as aforestated was the father of John Gabriel Jones. Winfred had been working at Simonson Lumber Company for almost a year. He was a high school graduate.

The trial to decide the legal effect of the limitation/exclusion clause did produce a conflict in the evidence as to whether the insured, Winfred, was under the influence of alcohol at the time he met his accidental death.

On December 25, 1974, Winfred, Rick Dowd, Winfred's brother, Clifford Jones, and Sunnae Whipple, Winfred's wife, were at Winfred's house. Rick Dowd testified that during the evening he saw Clifford drinking but did not see Winfred drinking. Sunnae Whipple testified that there were beer cans on the table where the men were playing cards, but she did not know who was drinking.

Winfred, Dowd and Clifford left in the late evening and went to the home of the parents of Winfred and Clifford. Only Winfred went inside the house. Winfred's mother, Delma Jones, testified that Winfred became very angry because he had not received a hospital bill that was mailed to his parents' home before it was turned over to a collection agency. Winfred did not appear intoxicated to Delma Jones.

Winfred then returned home. He spoke to his wife and she was of the opinion he was not under the influence of alcohol. Around midnight Winfred left to give Clifford and Dowd a ride home.

Ernie Knowlton observed Winfred's vehicle on Pebble Beach Drive around 12:30 a.m. In his opinion the car was going 80 miles per hour around a curve where the speed limit was marked 35 miles per hour. The car went off the road and was completely demolished.

Winfred and Clifford Jones were killed in the accident. The alcohol analysis performed by the Redding Regional Laboratory criminalist upon the blood identified as being that of Winfred Jones indicated a blood alcohol content of 0.16 percent. The analysis performed upon the blood identified as being that of Clifford Jones indicated a blood alcohol content of 0.07 percent.[1] The criminalist stated that a person with a 0.16 percent blood alcohol content could not safely operate an automobile.

■■■ Defendant contends that the trial court should have ruled on the issue of whether the insurance contract was an adhesion contract because such a determination would affect the rules of interpretation to be applied to the contract. We find no merit in this contention. After both sides had presented evidence and rested their causes, the trial court in ruling adversely on appellant's motion for a directed verdict stated: "So I'm going to give instructions based upon the court findings, and I think we've made a clear record, at least I hope we have."

We have read the record. It is reasonably clear to us that (1) the trial court viewed the insuring agreement as a contract of adhesion, but declined to so hold; (2) the trial court was of the opinion that there was "a duty upon the insurance company to inform the insured of exclusions"; but (3) the court decided to "give these instructions pertaining to whether or not they did give adequate notice to the insured of the exclusions, and let the jury make that determination and that finding and let the 12 people decide the case."

In our view, the group life and health insurance policy in question is an adhesion contract. Consequently the court did not err in instructing the jury on the law applicable to adhesion contracts.

Appellant argues that not all group insurance contracts are contracts of adhesion, citing *Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699 [131 Cal.Rptr. 882, 552 P.2d 1178]. While this is true, appellant's reliance on *Madden* is misplaced in the case at bar.

In *Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699, plaintiff, a state employee, had chosen to enroll in the Kaiser Foundation health plan. On appeal the plaintiff in *Madden* contended that she was unaware of the arbitration amendment to the health plan and should not be bound by this provision since the Kaiser contract was an adhesion

---

[1]At trial plaintiff apparently argued that the blood samples had inadvertently been switched.

contract. The court, in determining that the principles that govern contracts of adhesion did not bar enforcement of the arbitration amendment, stated: "The concept that a contract of adhesion should be interpreted and enforced differently from an ordinary contract has evolved from cases which have involved contractual provisions drafted and imposed by a party enjoying superior bargaining strength—provisions which unexpectedly and often unconscionably limit the obligations and liability of the party drafting the contract." (*Id.,* at p. 710.) ■ The result of establishing that a contract is one of adhesion is only to permit a certain construction of uncertain or ambiguous terms, but the contract is valid. (*Yeng Sue Chow* v. *Levi Strauss & Co.* (1975) 49 Cal.App.3d 315, 325 [122 Cal.Rptr. 816].)

In *Madden,* the court stated that two factors are present in many adhesion contracts: (1) The stronger party drafts the contract, and the weaker party has no opportunity, either personally or through an agent, to negotiate the terms of the contract; (2) the weaker party lacks any realistic opportunity to look elsewhere for a more favorable contract, he must either adhere to the standardized agreement or forego the needed service. The court in *Madden* also pointed out that in all cases where the courts had determined that a contract was an adhesion contract, "the courts have concerned themselves with weighted contractual provisions which served to limit the obligations or liability of the stronger party." (*Id.,* at p. 711.)

The court in *Madden* in holding that the principles that govern contracts of adhesion did not bar enforcement of the arbitration amendment determined that the two factors present in most contracts of adhesion were not present in *Madden.* The Kaiser Foundation plan was the product of negotiations between Kaiser and the Board of Administration of the Public Employees' Retirement System, the board authorized to negotiate contracts for group medical plans for state employees, and the board and Kaiser possessed parity of bargaining strength. The court also pointed out that plaintiff in *Madden* was not faced with the situation of accepting the Kaiser plan or foregoing a medical plan. "Plaintiff, . . . enjoyed the opportunity to select from among several medical plans negotiated and offered by the board, some of which did not include arbitration provisions, or to contract individually for medical care." (*Id.,* at p. 711.) Finally, the court pointed out that the arbitration clause did not limit the obligations or liability of Kaiser, but merely substituted one forum for another. (*Id.,* at p. 711.)

In the case at bar, we are faced with a totally different situation than was considered by the court in *Madden*. We can find no parity of bargaining strength. Even if Wallace is regarded as the representative of the employees of Simonson Lumber Company, Wallace was unable to and did not negotiate the terms of the group life and health insurance policy offered to the employees. Wallace could only select from seven different companies and three or four of these companies offered the same coverage. The employees at Simonson Lumber Company were not afforded the opportunity to choose between several plans, but could either accept the standardized agreement or contract individually for health and life insurance at a much higher rate. Accordingly the employees had no realistic opportunity to look elsewhere for a more favorable contract.[2] Finally, the provision in contention in the instant case limits the obligation and liability of defendant.

Therefore the contract in question must be interpreted according to the principles that apply to contracts of adhesion.

Defendant contends that the trial court erred in giving the following instructions to the jury: "The insurance company, . . . must call to the insured's attention any exclusions from coverage; if this is not done, then the exclusion cannot be given effect so as to limit the reasonable expectations of coverage of the insured."

Defendant urges that it was error to give this instruction because the "reasonable expectation" doctrine only applies to interpretation of contracts of adhesion. As noted above, the contract under consideration is a contract of adhesion. It is now well established that when an insurance policy is deemed an adhesion contract, the "express provisions of the insurance contract must be considered in light of the insured's normal expectations of the extent of the coverage of the policy, and notice of noncoverage in a situation where coverage may be reasonably expected must be conspicuous, plain and clear." (*Gyler* v. *Mission Ins. Co.* (1973) 10 Cal.3d 216, 220 [110 Cal.Rptr. 139, 514 P.2d 1219]; *Gray* v. *Zurich*

[2]Defendant would have this court conclude that since the Simonson Lumber Company had the realistic opportunity to look elsewhere for a more favorable contract, that the contract should not be regarded as an adhesion contract. Defendant's position ignores the fact that the court in *Madden* in considering whether other realistic opportunities were available to obtain a more favorable contract looked at the opportunities offered to the individual state employees, not to the opportunities available to the retirement board. Accordingly, it appears when the courts determine bargaining strength, we should look to the strength of the parties'actually performing the negotiations, and when the courts look to realistic opportunities, we should look to the opportunities offered to the person needing the service.

(1966) 65 Cal.2d 263, 269-271 [54 Cal.Rptr. 104, 419 P.2d 168]; *Schmidt* v. *Pacific Mut. Life Ins. Co.* (1969) 268 Cal.App.2d 735, 738 [74 Cal.Rptr. 367].) The court in *Gyler* also expressed this principle as follows: "The meaning of an insurance policy is determined by the insured's reasonable expectation of coverage, and all doubts are resolved against the insurer. [Citation.] Any uncertainty or ambiguity in the peril insured against will be resolved in favor of imposing liability." (*Gyler* v. *Mission Ins. Co., supra,* at p. 219.)

Defendant also asserts that this instruction was improper because the instruction stated that defendant owed a duty to notify the insured of the exclusion. Since the contract in question was an adhesion contract, defendant did have a duty to notify the insured of the exclusion. ██ "In the case of standardized insurance contracts, exceptions and limitations on coverage that the insured could *reasonably expect, must be called to his attention, clearly and plainly,* before the exclusions will be interpreted to relieve the insurer of liability or performance." (*Logan* v. *John Hancock Mut. Life Ins. Co., supra,* 41 Cal.App.3d 988, 995.)

██ Therefore, the instruction given was a correct statement of the law given the fact that the contract was an adhesion contract.[3]

██ Defendant further contends that the instructions given regarding the interpretation and construction of the insurance policy were inconsistent and could have only misled the jury to the prejudice of defendant. Specifically, defendant contends that the instruction that the "language being interpreted shall be interpreted to give effect to the mutual intentions or intention of the party or parties as it existed at the time of the contracting, so far as the same is ascertainable" is inconsistent with the instruction that the "policy language, insurance policy language, is to be interpreted according to the understanding of the average layman; to wit, a reasonable person of average intelligence." There does not appear to be anything inconsistent with instructing the jury that the "words of a contract are to be understood in their ordinary and popular sense" (Civ. Code, § 1644) and instructing the jury to give effect to the mutual intentions of the parties.

---

[3]Defendant contends that if the principles regarding the interpretation of adhesion contracts are not applied, plaintiff could not recover as a matter of law. Defendant states that if the general rules of construction of contracts are applied, the exclusionary clause in question would be interpreted against plaintiff, the insured. This is a misstatement of the law. Even if an insurance contract is not a contract of adhesion, any "ambiguity or uncertainty in the contract is to be resolved against the insurer." (*Schmidt* v. *Pacific Mut. Life Ins. Co., supra,* 268 Cal.App.2d 735, 738.)

 The court ruled that the words "assault or any criminal offense" in the exclusion in question required the commission of a felony.[4] The court instructed the jury that it was to determine whether a felony, if committed, came within the exclusionary language. Defendant contends that this latter instruction was erroneous. Defendant asserts that if the jury found Winfred Jones committed a felony, the exclusionary clause precluded recovery.

Defendant's argument overlooks the fact that the exclusionary clause cannot be given effect if the exclusion was not called to the insured's attention. Since the booklet provided to the employees did not mention the exclusion, Winfred Jones could have reasonably expected that accidental death provision would afford coverage when death occurred in an accident while he was intoxicated. (*Logan* v. *John Hancock Mut. Life Ins. Co.*, *supra*, 41 Cal.App.3d 988, 995-996.) "Nor, without being told, would he reasonably expect to lose coverage simply because ingestion of alcohol was a factor contributing to his death." (*Id.*, at p. 996.)

Accordingly, the jury could properly conclude that Winfred Jones did in fact commit a felony, but that the exclusion did not apply because it was not properly called to the insured's attention and the insured's reasonable expectation would be that he would be covered by the accidental death benefits if he were involved in an accident even though he was intoxicated.

 Defendant finally argues that as a matter of law no reasonable person could expect coverage for his death when his death results from the operation of a motor vehicle at excessive speed on a two-lane road while under the influence of alcohol. However, in *Logan* v. *John Hancock Mut. Life Ins. Co.*, *supra*, 41 Cal.App.3d 988, the court when faced with a very similar fact situation found that an insured could reasonably expect coverage under the accidental death provision.

We affirm the judgment.

Feinberg, J., and Halvonik, J., concurred.

---

[4] Defendant does not dispute this finding.