[Civ. No. 25517.   Second Dist., Div. Three.   Oct. 20, 1961.]

AMERICAN CAN COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and JOHN L. CACIOPPO, Respondents.

446

O'Melveny & Myers, Philip F. Westbrook, Jr., Roy E. Potts and C. A. Poppleton, Jr., for Petitioner.

Everett A. Corten, Edward A. Sarkisian and William B. Jones for Respondents.

VALLÉE, J.—Review of an award of the Industrial Accident Commission. Petitioner American Can Company, permissibly self-insured, seeks to annul the commission's award in favor of respondent John L. Cacioppo, referred to as applicant.

Applicant worked for petitioner as a millwright for some time prior to May 19, 1959. On that date he sustained an industrial injury to his left hip, shoulder, and back. He lost a couple of days from his work because of the injury. Although he reported for work, he was given no work for about six weeks and then was put on light duty. Pursuant to a claim based on that injury, the commission found the injury caused no temporary disability, but did cause a 5 per cent permanent disability, and made its award to that effect. Applicant continued to work full time.

On October 19, 1960, applicant sustained another industrial

injury to his back and was totally disabled until February 7, 1961. At the time of his second injury applicant was working as a sealer and stacker of milk cartons. The classification of a millwright is in a much higher occupational group in the commission's rating schedule than is the classification of a sealer. Applicant testified he had worked as a sealer for three days at that time and a half day at a previous time "when they had to take me off because I couldn't do it and then they placed me back on the job and told me I had to do it." He further testified it was his understanding that his work as a sealer was temporary and he would have gone back to millwright work. Robert Neyhart, general foreman of the department in which applicant was working at the time of injury, testified applicant "was a millwright and when there is no longer work in his classification, he is then assigned to work in another classification within a department providing he has enough seniority in that company to work."

Medical evidence showed applicant had an osteoarthritic condition of the back which was aggravated by the first injury and further aggravated by the second injury. Petitioner voluntarily paid the full maximum indemnity until January 4, 1961, at which time it terminated applicant's temporary disability payments on the basis of a medical report indicating applicant was able to return to work. On that date applicant was laid off.

The commission found applicant sustained the second injury of October 19, 1960, while employed as a millwright and the injury caused temporary total disability from October 20, 1960, to and including February 7, 1961, and temporary partial disability from February 8, 1961. It awarded temporary total disability payments to February 7, 1961; temporary partial disability payments from February 8, 1961, until its further order; medical and legal expenses, and further medical treatment. It denied apportionment of the temporary disability between applicant's preexisting disabilities and the injury of October 19, 1960.

Petitioner contends liability should have been apportioned between the injury of October 19, 1960, and applicant's preexisting disabilities. Medical reports without contradiction showed applicant had an osteoarthritic condition of the back prior to the injury of October 19, 1960. There is likewise no conflict in the evidence that applicant sustained a prior injury to his back while in the course and scope of his employment

with petitioner and that prior to the injury of October 19, 1960, he had objected to work outside the scope of millwright's duties, protesting that the work was too strenuous for him. On the other hand, there was no evidence that applicant would have been temporarily disabled without the intervention of the injury. The evidence was that he worked full time until the injury of October 1960.

Section 4663 of the Labor Code provides: "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury."

█ In respect to permanent disability, it is a question of fact for the determination of the commission whether an applicant's permanent disability resulted from the injury, including the aggravation effected by the injury on a preexisting disease, or whether the disability or a part thereof resulted from the normal progress of such a disease. (*Industrial Indem. Co.* v. *Industrial Acc. Com.*, 95 Cal.App.2d 443, 449-450 [213 P.2d 11].) █ There is no apportionment of disability as between an industrial injury on the one hand and one due to industrially caused aggravation of an employee's preexisting condition. (*Ferguson* v. *Industrial Acc. Com.*, 50 Cal.2d 469, 477-478 [326 P.2d 145].)

The commission asserts section 4663 is not applicable to awards for temporary disability. It argues that temporary disability relates to a healing period and the award is to compensate for wage loss during that period.

Hanna, Law of Employee Injuries and Workmen's Compensation, volume 2, page 272, says: "The term 'apportionment' is not ordinarily used in reference to disability of a temporary nature. The generally applicable provisions of the workmen's compensation law giving rise to possible apportionment do not specifically mention temporary disability, and they are construed as not authorizing an apportionment of liability for temporary disability in cases of industrial disability superimposed upon a preexisting, but dormant and nondisabling condition. The reason for this rule is that the employer is deemed to take the employee as he finds him at the time of employment and should, therefore, assume full responsibility for wage loss resulting from the aggravation or lighting up of a preexisting condition by industrial injury."

Petitioner contends the foregoing reasoning is inapplicable

to the present case. It attempts to distinguish the facts here from those of the several cases which deny apportionment of liability for temporary disability on the ground that in each of those cases an industrial accident aggravated a preexisting but dormant and nondisabling condition. It argues the record before us is "replete" with evidence that applicant's preexisting condition was not dormant prior to the injury but was almost completely debilitating.

No reason was given in the findings for denial of apportionment. Petitioner contends failure to give any reason for the finding as required by section 5313 of the Labor Code was also reversible error. The opinion and order of the commission denying reconsideration replied to this contention thus:

"In response to this contention that he failed to give the reasons for not apportioning temporary disability, the Referee states that it is 'common knowledge that apportionment was almost unheard of on temporary disability.' Although reasons for decisions are required by Section 5313 of the Labor Code, it is true that except in rare circumstances temporary disability is not apportioned. In any event we held, after an independent evaluation of the evidence, that apportionment of temporary disability in this case is not indicated."

Findings were made that the injury caused both the temporary total and temporary partial disability. In view of these findings and the statement of the commission, we think it sufficiently clear that apportionment was denied because it was determined, as a question of fact, that the normal progress of a nonindustrial disease was not the cause, either in whole or in part, of applicant's temporary disability. Thus, the question of whether, as a matter of law, liability for temporary disability must be apportioned in a proper case need not be considered. The only question is whether there is substantial evidence in the record to support the findings.

In a separate point petitioner contends the finding of continuing temporary disability is not supported by substantial evidence. Its petition for reconsideration states it does not object to the finding that temporary total disability existed from the day after the injury to January 4, 1961, but only to findings that temporary total disability continued from January 4, 1961, to and including February 7, 1961, and that temporary partial disability continued thereafter. It thus appears the question is whether there was substantial evidence that applicant's disability resulted from the injury of October 19, 1960, or from aggravation of a pre-

existing disease caused by the injury and not from the normal progress of disease, and that the disability continued after January 4, 1961.

It is the province of the commission to resolve conflicts in the evidence, and as trier of fact it may accept the evidence of any one expert or choose a figure between experts based on all the evidence. (*Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.*, 33 Cal.2d 89, 94 [199 P.2d 302].) With reference only to the duration of disability resulting from injuries to his back sustained by an employee in the course of his employment, the commission is entitled to consider the employee's testimony as against that of medical experts. The testimony of each must be considered by the commission and the conflict resolved by it. (*Southern Counties Gas Co.* v. *Industrial Acc. Com.*, 182 Cal.App.2d 156, 160 [5 Cal.Rptr. 758].) On review the evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the applicant. (*Coborn* v. *Industrial Acc. Com.*, 31 Cal.2d 713, 716-717 [192 P.2d 959].)

As to the cause of applicant's disability, Dr. Francis L. Engelman, in his report of February 3, 1961, stated: "This patient suffered two injuries to his back—the first one in May, 1949, and the second one in October, 1960. Both of these accidents have led to an aggravation of preexisting arthritis, and most of his difficulties can be explained on this basis. It is impossible for this examiner to state at this time the percentile contribution of either injury." Dr. D. G. Dickerson, in his report of February 6, 1961, diagnosed applicant's disability as "low back strain superimposed upon old osteoarthritis." His prognosis was: "The strain will resolve. The osteoarthritis will continue to progress. . . ." We think it may be fairly inferred these statements express the opinions that applicant's disability is the outgrowth of the injury of October 19, 1960, and his disability continued after January 4, 1961. In addition there was extensive testimony by applicant in respect to the duration of disability resulting from the injury of October 19, 1960. He testified he feels worse now than he did "a few days before my last accident," he has more pain in his back, his actions are more limited, and he has more frequent headaches than before the last accident.

It is sufficient to say that although there was medical testimony to the effect that applicant's continuing disability was not the result of his injury, there was some medical evidence

and the testimony of the applicant which sustained the questioned findings.

Petitioner objects to the finding that applicant sustained the injury while employed as a millwright. The parties agree that whether petitioner be classified as a millwright or as a sealer was not and is not relevant or material in this proceeding. Temporary disability indemnity is measured in terms of wage loss, which was the same regardless of whether he was working as a millwright or as a sealer. (Lab. Code, §§ 4653, 4654.) In determining the percentages of permanent disability, account is taken of the nature of the physical injury, the occupation of the injured employee, and his age at the time of injury, consideration being given to the diminished ability of the injured employee to compete in an open labor market. (Lab. Code, § 4660.) Inasmuch as a determination of the commission may be res judicata in all subsequent proceedings between the same parties or their privies (*Scott* v. *Industrial Acc. Com.*, 46 Cal.2d 76, 83 [293 P.2d 18]), if at a later date applicant is awarded permanent disability compensation based on the injury of October 19, 1960, the finding in question might affect the award. There is no question that applicant was working for petitioner at the time he was injured. A finding to that effect was all that was called for in this proceeding. Whether he was working as a millwright or as a sealer was not a material issue and the finding that he was working as a millwright should not have been made.

The finding reading, "John L. Cacioppo, born June 8, 1919, while employed as a millwright on maintenance of machines, on October 19, 1960, at Vernon, California, by American Can Company, a corporation, sustained injury arising out of and occurring in the course of his employment, to his back," is amended to read: "John L. Cacioppo, born June 8, 1919, while employed by American Can Company, a corporation, on October 19, 1960, at Vernon, California, sustained injury to his back arising out of and occurring in the course of his employment."

The award is affirmed.

Shinn, P. J., and Ford, J., concurred.