[Civ. No. 45009. Second Dist., Div. Five. Mar. 24, 1975.]

AUSTIN BROOKS RUSSELL, Plaintiff and Appellant, v.
BANKERS LIFE COMPANY, Defendant and Respondent.

**COUNSEL**

Gottlieb, Gottlieb & Stein and Arthur J. Gottlieb for Plaintiff and Appellant.

Lillick, McHose, Wheat, Adams & Charles and Michael D. Dempsey for Defendant and Respondent.

**OPINION**

**STEPHENS, J.**—This is an appeal from a judgment rendered in favor of respondent Bankers Life Company in an action denominated by appellant Austin B. Russell in his complaint as one "for declaratory relief and for money." The main issue revolves around the interpretation of a group disability insurance policy issued by respondent to appellant's employer, George Chevrolet. Since the underlying facts in this case are not in dispute and the issue is whether the court properly interpreted the contested insurance policy provision, we adopt generally the statement of facts as set forth in respondent's brief.

Appellant was employed by George Chevrolet as a service writer. While there, he was covered under Chevrolet's workmen's compensation insurance policy issued by Allstate Insurance Company. Pursuant to his employment, appellant was also eligible for long-term group disability insurance through respondent. On April 1, 1971, in consideration of payment of specified premiums, respondent issued to appellant a certificate of insurance under the group policy with Chevrolet. The record shows that appellant was never provided with a copy of the disability policy. Even appellant's attorney was furnished only excerpts from the master policy (which was maintained in Des Moines, Iowa) when he requested a copy of the policy. The covering letter transmitting the excerpts stated that the group policy-holder (George Chevrolet) had a complete copy. Appellant, however, had been given a copy of an "insurance booklet," the first page of which states: "This booklet describes your insurance plan and it is your certificate while you are insured. We suggest you read it carefully so that you will be well acquainted with all the benefits to which you are entitled. The Group Policy determines all rights and benefits which are briefly outlined in this booklet. The benefits of this plan are designed to help you obtain the financial security that adequate protection can bring. [s] H. G. Allen President." The following are pertinent portions of the excerpts which were later furnished to appellant's attorney:

Section 12 of the policy provides: "If a Person becomes totally disabled while he is insured under this Policy and if such total disability continues without interruption during the qualifying period, the Company, during the continuance of such total disability and subject to all provisions of this Policy, will pay to the Person the monthly income which accrues in accordance with the provisions of Section 13—Schedule of Insurance . . . ." Section 15 of the policy, entitled "Coordination of

Benefits," reads in part: "If a Person is eligible for income from other sources for any month in which a benefit is payable under this Policy, the monthly benefit which accrues under this Policy shall be limited to an amount which, when added to such income from other sources does not exceed 70% of the Person's covered monthly compensation. For the purposes of this policy, income from other sources shall be the sum of:

"(a) any payments for which the person and any of his dependents are eligible under the Federal Social Security Act; and

"(b) any payment for which the Person is eligible under a *Workmen's Compensation Act* or other similar legislation, or under any plan (including compulsory plans) providing benefits for loss of time from employment to which the Group Policyholder contributes or makes payroll deductions [emphasis added]; and

"(c) any payment the Person receives under any salary continuation or retirement plan of the Group Policyholder; and

"(d) 60% of any payment the Person receives as wage or profit in accordance with the provisions of Section 14—Rehabilitation Benefit; and

"(e) any payment for which the Person is eligible under the California Unemployment Insurance Code."

Application of the coverage under the insurance purchased by appellant came into question on August 5, 1971, when appellant sustained an injury while on the job and became totally disabled. On September 13, 1971, he submitted to respondent an application for the commencement of payment of benefits under the long-term disability policy (from which the above quoted portions have been set forth). Appellant had begun receiving workmen's compensation temporary disability benefits on August 16, 1971 from the underwriter, Allstate Insurance Company; between August 16, 1971 and January 9, 1972, appellant received $1,837.50 in such benefits, and an additional $315 for permanent disability payments, also from Allstate.[1] On October 4, 1972, appellant entered into a lump sum compromise and release agreement with Allstate for $8,925.55. The amount appellant realized under this

---

[1]Appellant also received $310.71 for California unemployment temporary disability benefits. (Unemp. Ins. Code, § 2629.) He consented to the imposition of a lien pursuant to Labor Code section 4903, subdivision (f). (See also Lab. Code, § 4904; Workmen's Compensation Practice (Cont.Ed.Bar 1973) §§ 16.2 and 16.20, pp. 575-576, 583.) For the allocation formula for unemployment disability benefits, see *California-Western States Life Ins. Co.* v. *Industrial Acc. Com.,* 59 Cal.2d 257, 260-261 [28 Cal.Rptr. 872, 379 P.2d 328]; Workmen's Compensation Practice (Cont.Ed.Bar 1973) § 16.22, pp. 588-589.)

agreement was $7,889.76.[2] The agreement was approved by the Workmen's Compensation Appeals Board. (Lab. Code, § 5001.) The total payments (temporary disability, permanent disability, and lump sum) from the Workmen's Compensation underwriter and California Unemployment Disability Insurance amounted to $10,352.97.

In November 1972, in accordance with Section 15(b) of its long-term disability policy, respondent began withholding benefits from appellant which, according to respondent, were to continue "until the benefits equalled the amount appellant received under the Workmen's Compensation Act."[3] In March 1973, appellant brought this action for declaratory relief and for money, claiming that the policy provisions for coordination of benefits under Section 15(b) of the policy were ambiguous and should be applied only to the extent that payments under the Workmen's Compensation Act provide "benefits for loss of time from employment." Appellant further argues that the workmen's compensation lump sum settlement was for further and lifetime medical care, medical legal costs, lien claims, earnings, and other items. To the extent that the settlement did not compensate for lost earnings, appellant contends that no offset should be made from the disability insurance benefits.

The trial court found: (1) that there is no ambiguity in the contract; (2) that the comma in Section 15(b)[4] of respondent's policy separates two phrases; (3) that the phrase "Workmen's Compensation or other similar legislation" refers to any payment for whatever purpose made under California's workmen's compensation or other similar legislation; and (4) that respondent need not establish that any workmen's compensation

---

[2]The following sums were deducted from the amount of $8,925.55: $147.20 for doctor fees; $200 for unpaid bills; $800 for attorney fees; and $88.59 "to State of California, Dept. of Human Resources Development" (presumably for the apportioned amount of unemployment disability benefits). Future medical and hospital expenses were to be assumed by appellant.

[3]The total sum appellant actually received was $10,352.97, made up as follows: temporary disability, $1,837.50; permanent disability, $315; lump sum (after deductions), $7,889.76; California unemployment disability insurance, $310.71. When $310.71 is subtracted, this leaves a total of $10,042.26 which respondent apparently intends to deduct.

[4]The comma referred to appears between the words "legislation" and "or" in paragraph 15(b) of the policy, which reads as follows (and in which we have italicized the comma): "any payment for which the Person is eligible under a Workmen's Compensation Act or other similar legislation, or under any plan (including compulsory plans) providing benefits for loss of time from employment to which the Group Policy holder contributes or makes payroll deductions [shall be included as 'income from other sources']." (See p. 409, *ante* for entire prefacing paragraph.)

payments were made to provide a benefit for "loss of time" from employment. The trial court concluded that respondent was entitled to coordinate its benefits with payments received by appellant under the Workmen's Compensation Act and to determine the monthly equivalent which equitably adjusts for the amount of the lump sum payment received by appellant.

## DISCUSSION

### *Interpretation of Insurance Policies*

Certain fundamental rules have evolved with reference to the interpretation of insurance contracts.  ■  If any ambiguity or uncertainty exists, an insurance policy is to be construed strictly against the insurer, and most liberally in favor of the insured. (*State Farm Mut. Auto. Ins. Co.* v. *Johnston,* 9 Cal.3d 270, 274 [107 Cal.Rptr. 149, 507 P.2d 1357].) The standard to be used in construing such contracts is the understanding of the ordinary reasonable person. (*Arenson* v. *Nat. Automobile & Cas. Ins. Co.,* 45 Cal.2d 81, 83 [286 P.2d 816].)  ■  The rule of strict construction against the insurer and liberal construction in favor of the insured is particularly applicable where the policy purports to exclude coverage or substantially limit liability.[5] The burden rests on the insurer to phrase such exclusions and limitations in plain, clear, and conspicuous language. (*Thompson* v. *Occidental Life Ins. Co.,* 9 Cal.3d 904, 921 [109 Cal.Rptr. 473, 513 P.2d 353].)  ■  However, when the terms of the policy are plain and explicit, the courts will not indulge in a forced construction so as to fasten a liability on the insurance company which it has not assumed. (*New York Life Ins. Co.* v. *Hollender,* 38 Cal.2d 73, 81 [237 P.2d 510].) "While . . . any ambiguity in an insurance contract will be resolved adversely to the insurer, such rule is not without limitation.

---

[5]This principle was succinctly stated by the court in *Sykes* v. *Nationwide Mutual Insurance Company,* 413 Pa. 640 [198 A.2d 844, 845], as follows: "This [insurance-policy] paragraph would most assuredly never take a prize in a school of expression for clear and crystalline prose. Ambiguity runs through it like ink poured into a fish bowl, clouding the identity of its swimming occupants. From this clouded bowl of language the insurance company fishes up the conclusion that the exclusion clause was intended to allow coverage only in the event of certain factors which are absent here. . . . [¶] Aside from the morality involved in permitting ambiguous language to entice insurance buyers, only to drop them into a pit of non-recoverability when claims are made under the policy, the insurance company cannot maintain its position because of the law which specifically states that where ambiguity clouds interpretation the contract in controversy must be interpreted against its authors. The person who writes with ink which spreads and simultaneously produces two conflicting versions of the same proposition cannot complain if the person affected by both propositions chooses to accept that which is more helpful to him and which is against the interests of the contract writer."

Some actual or apparent ambiguity must be present before the rule comes into play . . . [otherwise] the plain language of the limitation must be respected." (*Wetzler* v. *State Farm Mut. Auto. Ins. Co.,* 246 Cal.App.2d 472, 476 [54 Cal.Rptr. 756]; see also *McMillan* v. *State Farm Ins. Co.,* 211 Cal.App.2d 58, 62-63 [27 Cal.Rptr. 125].)

*Interpretation of the*
*Instant Insurance Policy*

■ The construction of the instant policy is one of law because it is based upon the terms of the insurance contract. Accordingly, we are not bound by the trial court's interpretation of the policy, and it is our duty to make the final determination in accordance with the applicable principles of law. (*Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]; *Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825].) The test we must apply in construing the policy may be summarized as follows: this court must resolve uncertainties in favor of the insured and interpret the policy provisions according to the layman's reasonable expectations. (See *Gray* v. *Zurich Insurance Co.,* 65 Cal.2d 263, 271 [54 Cal.Rptr. 104, 419 P.2d 168]; *Logan* v. *John Hancock Mut. Life Ins. Co.,* 41 Cal.App.3d 988, 993 [116 Cal.Rptr. 528].)

■ Respondent argues that Section 15(b) of the policy is plain and unambiguous; that it refers to two distinct types of payment which offset the amount of benefits appellant is entitled to receive under the disability policy. The first, described before the comma separating the phrases, is "any payment for which the person is eligible under a Workmen's Compensation Act or other similar legislation." The second kind of payment, described after the comma, is "any plan (including compulsory plans) providing benefits for loss of time from employment to which the Group Policy-holder contributes or makes payroll deductions." Specifically, respondent asserts that the two types of payments are expressed in separate and independent phrases; that the second phrase reading "providing benefits for loss of time from employment" does not modify the phrase "any payment for which the person is eligible under a Workmen's Compensation Act or other similar legislation."

■ As previously mentioned, appellant was not given a copy of the policy. In this regard, the court in *Steven* v. *Fidelity & Casualty Co.,* 58 Cal.2d 862 [27 Cal.Rptr. 172, 377 P.2d 284] held that an insurer could not rely on limitations or exclusions of coverage which the insured could reasonably expect unless those limitations were plainly and clearly

brought to the attention of the insured. An exclusion or limitation contained in a policy which the insured has never seen cannot possibly provide adequate notice, let alone the "clear and plain notice" required by *Steven*. Accordingly, the provision will not be interpreted to limit the obligation of the insurer to perform. (*Young* v. *Metropolitan Life Ins. Co.*, 272 Cal.App.2d 453, 460-461 [77 Cal.Rptr. 382, 78 Cal.Rptr. 568].)

Moreover, while appellant was given a booklet which briefly outlined the coverage under the policy, it, too, failed to provide appellant with clear and plain notice of the limitations of the coordination provision. On the second page of the booklet, the benefits, in pertinent part, were set forth as follows:

> "SCHEDULE OF YOUR INSURANCE BENEFITS
> "(PLAN EFFECTIVE APRIL 1, 1971)

"INSURANCE FOR YOU
"LONG TERM DISABILITY
"Monthly Income Benefits—66⅔% of your covered monthly compensation to a Maximum Benefit of $1,000.00 *less any payments for that month for which you and your dependents are eligible under the Federal Social Security Act, or the California Unemployment Insurance Code.*" (Italics added.)

There is no mention that any type of workmen's compensation benefits would be offset against any payment under the policy. Certainly this cannot suffice as adequate notice of the limitation. "Income from other sources includes any payments for which you and your dependents are eligible under the Federal Social Security Act, any payment for which you are eligible under a Workmen's Compensation Act or other similar legislation, or the California Unemployment Insurance Code or under any plan (including compulsory plans) providing benefits for loss of time from employment to which the Group Policyholder contributes or makes payroll deductions, and any payment you receive under a salary continuance or retirement plan of the Group Policyholder." On this page, the workmen's compensation portion is separated from the phrase it precedes in Section 15(b) of the policy by the unemployment insurance clause, Section 15(e). This merely adds confusion.

■ There is another reason which dictates reversal of the judgment. The coordination provision here was designed to offset "income [received] from other sources." The provision proceeds to define income

sources in five subparagraphs, each of which, with the exception of Section 15(b), refers only to one type of payment. Each of these subparagraphs (except (d)) begins with the words "any payment." There is no question that "any payment" found in the first phrase of Section 15(b) dealing with the income source of workmen's compensation benefits is modified by the second phrase of Section 15(b), so that the second type of income source in this section is defined as any payment under a plan providing benefits *for loss of time* from employment for which the group policyholder contributes or makes payroll deductions. Likewise, we agree with appellant's contention that the words "loss of time from employment" in the second phrase of 15(b) can be viewed as modifying the income source referred to in the first phrase—any payment under the Workmen's Compensation Act for loss of time from employment. Since the section is susceptible to two reasonable constructions, we must adopt the one more favorable to the policyholder. (*Island v. Fireman's Fund Indemnity Co.*, 30 Cal.2d 541, 548 [184 P.2d 153, 173 A.L.R. 896]; *Jarrett v. Allstate Ins. Co.*, 209 Cal.App.2d 804, 809 [26 Cal.Rptr. 231]; *Bonfils v. Pacific Auto. Ins. Co.*, 165 Cal.App.2d 152, 159 [331 P.2d 766].) Respondent could have readily separated the two types of income sources in Section 15(b) in a manner other than by the mere insertion of a comma; each of the two types of income sources could have been separated into subparagraphs to avoid any interpretation problems.

### Workmen's Compensation Benefits

We conclude that the only type of workmen's compensation benefits which may be offset are those providing for loss of time from employment. We must therefore examine the workmen's compensation area to determine which type of benefits fall into this category.

■ There are two basic classifications of workmen's compensation disability benefits: temporary and permanent.[6] Each type of benefit is designed to compensate for a different type of loss. "Permanent disability is distinct from temporary. The primary element in temporary disability is the loss of wages, whereas loss of earning power is not a prerequisite to the right to permanent disability; permanent body

---

[6]"Disability," as that term is used in connection with the Workmen's Compensation Act, is a composite of two principal elements: (1) actual incapacity to perform the tasks usually encountered in one's employment and the wage loss resulting therefrom, and (2) physical impairment of the body that may or may not be incapacitating. (*Allied Compensation Ins. Co. v. Industrial Acc. Com.*, 211 Cal.App.2d 821, 831 [27 Cal.Rptr. 918].)

impairment is the prime consideration in determining right to permanent disability." (*Manning* v. *Workmen's Comp. App. Bd.,* 10 Cal.App.3d 655, 658 [89 Cal.Rptr. 76]; see also *Fred Gledhill Chevrolet* v. *Ind. Acc. Com.,* 62 Cal.2d 59, 62 [41 Cal.Rptr. 170, 396 P.2d 586]; *Allied Compensation Ins. Co.* v. *Industrial Acc. Com.,* 211 Cal.App.2d 821, 832 [27 Cal.Rptr. 918]; *American Can Co.* v. *Industrial Acc. Com.,* 196 Cal.App.2d 445, 451 [16 Cal.Rptr. 424].) In other words, temporary disability payments are a substitute for lost wages (*Granado* v. *Workmen's Comp. App. Bd.,* 69 Cal.2d 399, 404 [71 Cal.Rptr. 678, 445 P.2d 294]) during the temporary disability period, while permanent disability is for permanent bodily impairment and is designed to indemnify for the insured employee's impairment of future earning capacity or "diminished ability . . . to compete in [the] open labor market." (Lab. Code, § 4660, subd. (a);[7] see also *Moyer* v. *Workmen's Comp. Appeals Bd.,* 24 Cal.App.3d 650, 659 [100 Cal.Rptr. 540]; Cal. Workmen's Compensation Practice (Cont.Ed. Bar 1973) § 14.17, p. 487.) Thus permanent disability is not based solely on loss of wages, but is based on actual incapacity to perform the tasks usually encountered in one's employment, and on physical impairment of the body that may or may not be incapacitating. (*Granado, supra,* at p. 404.)

Therefore, respondent is only entitled to offset the amount of temporary disability benefits which appellant received from workmen's compensation benefits.

■ Absent the modification by the term "loss of time from employment," the disability policy here would encompass both types of disability classifications as coverages to be excluded. Even assuming arguendo that this were the case, the provision would still be ambiguous. A disability policy such as the one involved here "is designed to provide a substitute for earnings when, because of bodily injury or disease, the insured is deprived of the capacity to earn his living." (*Erreca* v. *West. States Life Ins. Co.,* 19 Cal.2d 388, 397 [121 P.2d 689, 141 A.L.R. 68].) No doubt it is also the expectation of a reasonable person that a disability policy (either procured for his benefit, or one which he has obtained for his benefit, or for which he has contributed premiums) will provide substitute income for lost wages. A reasonable person would not

---

[7]Labor Code, section 4660, subdivision (a): "In determining the percentages of permanent disability, account shall be taken of the nature of the physical injury or disfigurement, the occupation of the injured employee, and his age at the time of such injury, consideration being given to the diminished ability of such injured employee to compete in an open labor market."

anticipate that permanent disability benefits under the Workmen's Compensation Act will be deducted from the amount of payment under the disability policy.

Significantly, Labor Code section 4660 does not require a showing of loss of earning power as a prerequisite to the payment of compensation for a permanent disability (*Smith* v. *Industrial Acc. Com.,* 44 Cal.2d 364, 377 [282 P.2d 64]), and section 4661 provides that an injured employee "is entitled to compensation for any permanent disability sustained by him *in addition* to any payment received . . . for temporary disability." (Italics added.)

It is well recognized that in the case of a standardized insurance contract, exceptions and limitations in coverage—especially those that the insured could not reasonably expect—must be stated in conspicuous, unambiguous and unequivocal language which an ordinary layman can understand. (*Thompson* v. *Occidental Life Ins. Co., supra,* 9 Cal.3d 904, 912; *Steven* v. *Fidelity & Casualty Co., supra,* 58 Cal.2d 862, 879; *Logan* v. *John Hancock Mut. Life Ins. Co., supra,* 41 Cal.App.3d 988, 994.) Here, Section 15(b) is insufficient to inform a reasonable person that he is precluded from receiving benefits for both lost wages and for compensation for permanent bodily impairment. No doubt this is contrary to one of the reasons why disability insurance policies are purchased in addition to protection under workmen's compensation laws to provide coverage for both types of losses. "If such an exclusion had been stated in language clear to anyone who reads, it is possible that a lesser number of persons would have wanted to buy the insurance policy because workmen's compensation is so much a part of a workmen's economic status that no worker would want to willingly forego its benefits. Under those circumstances, the company would have quite probably sold less policies." (*Sykes* v. *Nationwide Mutual Insurance Company, supra,* 413 Pa. 640 [198 A.2d 844, 845].) This analysis finds support in California Unemployment Insurance Code section 2629, which permits offset for workmen's compensation benefits *only* against temporary disability benefits. That section provides: "During receipt or right to receive payments under workmen's compensation law or employer's liability law (a) Except as provided in this section, an individual is not eligible for disability benefits under this part for any day of unemployment and disability for which he has received, or is entitled to receive 'other benefits' in the form of cash payments.
(b) 'Other benefits' as used in this section means:
(1) Temporary disability indemnity under a workmen's compensation

law of this state or of any other state or of the federal government.

(2) Temporary disability benefits under any employer's liability law of this state or of any other state or of the federal government.

(c) If such 'other benefits' are less than the amount an individual would otherwise receive as disability benefits under this part, he shall be entitled to receive, for such day, if otherwise eligible, disability benefits under this part reduced by the amount of such 'other benefits.' If after receipt of, or determination of entitlement to receive, such other benefits, a claim for disability benefits under this part is filed during the same continuous period of disability, because of a disability for which a claim for such other benefits was made, the maximum amount of disability benefits payable under this part during the disability benefit period thereby established shall be reduced by the amount of such 'other benefits' which the claimant has received or has been determined to be entitled to receive." Prior to the 1957 amendment which limited the offset to temporary disability benefits, section 2629 was interpreted by the Supreme Court in 1951 in *Bryant* v. *Industrial Acc. Com.,* 37 Cal.2d 215 [231 P.2d 32]. There the court held that a lien (Lab. Code, § 4903, subd. (f)) could be imposed for the amount of unemployment disability benefits during the period that the claimant was also entitled to receive workmen's compensation benefits for both temporary and permanent disability. The court rejected the argument that the amendment of Labor Code section 4661 permitting *recovery* by an injured employee of both temporary and permanent disability affected the construction of section 2629. It refused to limit the offset to only temporary disability benefits. However, Justice Carter, in a dissenting opinion, stated (at pp. 224-227): ". . . It is clear therefore that temporary disability payments under workmen's compensation laws are a substitute for wages lost by the employee while disabled. Hence if the payments for disability allowed under the Unemployment Insurance Act are also for such *wages* lost, then payments thereunder are deductible from such temporary disability compensation payments *only* and not from permanent disability compensation payments. That is, the unemployment disability provisions relate to and are compatible with only the temporary disability features of workmen's compensation. That it deals only with wages, rather than earning capacity is clear. 'An individual shall be deemed disabled in *any week* in which, because of his physical or mental condition, he is unable to perform his regular or customary work.' (Unemployment Insurance Act, Stats. 1935, p. 1226, as amended, § 201. Italics added.) The amount of benefits is computed on the basis of the wages payable (*id.* §§ 53, 54, 203), and, as noted in the majority opinion, the reference is to the '*weeks*' the employee receives benefits under the Workmen's Compensation Act,

all pointing to the conclusion that wages, not earning capacity, is the basis for computing unemployment disability benefits.

"That permanent disability payments should not be deducted from unemployment disability payments, or vice versa, is patently sensible. The former are for the loss for life of the capacity to earn a living. They are not apportioned according to certain periods of time, that is, one installment does not represent the payment for the loss of earning capacity for the installment period. The latter, however, are directly apportioned to *each week* and on the basis of the wages that would have been paid for that week had the employee not been disabled. There is, therefore, insufficient similarity between the two to justify balancing one against the other.

"The only answer made by the majority opinion to the foregoing construction of the statute is that it is 'tortuous.' On the contrary it is wholly reasonable and compelled by the requirement that workmen's compensation laws be liberally construed to preserve their benefits to their beneficiaries. (Lab. Code, § 3202.)

". . . . . . . . . . . . . . . . .

"Finally, there is an additional factor that makes the foregoing interpretation of the statutes mandatory, if anything is to be salvaged from the legislative declaration that an employee is entitled to *both temporary and permanent disability.* . . . Finally in 1949, the Legislature went the whole way and allowed *both* temporary and permanent disability compensation to be paid. It stated: 'Where an injury causes both temporary and permanent disability, the injured employee is entitled to compensation for any permanent disability sustained by him *in addition to any payment received by such injured employee for temporary disability.*' (Stats. 1949, ch. 107. Italics added.) Here is a clear mandate of the Legislature that the permanent disability compensation *shall not* be diminished by any payment of temporary disability compensation. That is to say, the 'loss of wages'—temporary disability compensation—shall not reduce the 'loss of earning capacity'—permanent disability compensation. But under the strained construction of the statutes given in the majority opinion that mandate is completely ignored. It says that the unemployment disability payment, which is for the loss of wages only, the same as temporary disability compensation, *must* be deducted from the permanent disability compensation allowed for loss of earning capacity. That puts the employee back where he was prior to 1945 with

the temporary deducted from the permanent disability compensation allowed him. The unemployment disability benefit may be deducted from the temporary disability compensation, but the deduction must stop there, for if it extends to the permanent disability compensation, nothing was achieved by the 1945, 1947 and 1949 amendments to section 4661 of the Labor Code. The various statutes must be read together to reach the legislative intent. I cannot assume, as does the majority, that the Legislature intended to give with one hand and take away with the other."

Section 2629 was amended in 1957 in accordance with Justice Carter's position.

## DISPOSITION

The lump sum payment in the instant case was for "further and lifetime medical care, medical-legal costs, lien claims, earnings, and other issues." (Defendant's Exh. B.) To the extent that the lump sum payment does not compensate for lost earnings, no deduction should have been made from the monthly disability insurance payments. It is clear that the $1,837.50 for temporary disability was correctly offset. A reasonable person would expect that such benefits would not be paid in addition to the benefits under respondent's insurance policy because they are designed to cover the same loss—lost wages. However, as far as the $315 for permanent disability benefits, defendant was not entitled to have this amount offset, for the reasons previously discussed. With respect to the lump sum payment, there is no indication in the record whether this amount is attributable to lost wages (temporary disability) or permanent bodily impairment (permanent disability) (Lab. Code, § 5101).[8] In his brief, appellant contends that the lump sum amount of $7,889.76 which he received was for permanent disability. During oral

---

[8]Section 5101. "The amount of the lump sum shall be determined as follows:

(a) If the injury causes temporary disability, the appeals board shall estimate the probable duration thereof and the probable amount of the temporary disability payments therefor, in accordance with Chapter 2 of Part 2 of this division, and shall fix the lump sum at the amount so determined.

"(b) If the injury causes permanent disability or death, the appeals board shall fix the total amount of the permanent disability payment or death benefit payable therefor in accordance with Chapter 2 of Part 2 of this division, and shall estimate the present value thereof, assuming interest at the rate of 3 percent per annum and disregarding the probability of the beneficiary's death in all cases except where the percentage of permanent disability is such as to entitle the beneficiary to a life pension, and then taking into consideration the probability of the beneficiary's death only in estimating the present value of such life pension."

argument, appellant reiterated this contention, to which respondent did not object. Therefore, we assume that appellant's contention is correct. Accordingly, respondent was not entitled to have this amount offset. Furthermore, Section 16 of the insurance policy should be followed. This section provides: "Notwithstanding any provision of this Policy to the contrary, the minimum payment for any month for which monthly income accrues shall be $50.00." This does not appear to have been followed by respondent.[9]

The judgment is reversed.

Kaus, P. J., and Hastings, J., concurred.

---

[9]There is presently pending, in this division, an appeal which involves the rights of the noninjured spouse in temporary and permanent workmen's compensation awards due the husband. In view of the many different considerations involved in interspousal disputes—as distinguished from litigation between one spouse and his insurer—nothing said herein should be deemed determinative of the issues in the pending appeal.