John J. CANOVA, d/b/a Canova Moving
& Storage Co., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

NATIONAL LABOR RELATIONS
BOARD, Cross-Petitioner,

v.

John J. CANOVA d/b/a Canova Moving
& Storage Co., Cross-Respondent.

Nos. 82–7316, 82–7395.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 14, 1983.

Decided June 24, 1983.

J. Mark Montobbio, San Francisco, Cal., for petitioner, cross-respondent.

Kenneth Hipp, Deputy Asst. Gen. Counsel, Washington, D.C., for respondent, cross-petitioner.

Before WRIGHT, CANBY, and BOO-CHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

John J. Canova d/b/a Canova Moving & Storage Co., pursuant to 29 U.S.C. § 160(f) (1976), seeks review of a supplemental decision and order of the National Labor Relations Board setting the amount of backpay due from Canova to two employees adjudged to have been discriminatorily discharged. The Board cross-applies for enforcement of its order. Canova had agreed by stipulation to comply with a Board order requiring an offer of reinstatement and payment of backpay. In the backpay proceeding, however, Canova raised defenses of earlier valid offers of reinstatement, disability during the backpay period, offset of workers' compensation benefits, and failure to seek other employment, which would have reduced or negated the backpay awards. The Board rejected all defenses. We find the Board's actions proper and accordingly enforce the Board's order.

*Facts*

On January 31, 1977, the Board issued its Decision and Order in the unfair labor practice proceeding finding that Canova had violated 29 U.S.C. § 158(a)(1) & (3) (1976) by discriminatorily discharging O.D. Phillips and Tim Davis. Phillips and Davis had been employed at Canova as driver and helper, respectively, until their discharge on January 5, 1976. The Board's order required Canova to offer full reinstatement to Davis and Phillips and to make them whole for any loss of earnings they might have suffered as a result of their discharge. On April 14, 1978, Canova and the Board's General Counsel entered into a stipulation that Canova would comply with the Board's order. Accordingly, the Board's Regional Director instituted the proceeding now under review and issued a backpay specification setting forth amounts due to the employees. The award to Phillips was calculated over the period from January 5, 1976 to November 15, 1977, when he was declared permanently disabled. For Davis, the backpay period was from January 5, 1976 to April 18, 1978, when the Board determined that Canova had made a valid offer of reinstatement.

In answer to the backpay specification, Canova raised a number of defenses which would negate or reduce its backpay liability. Canova claimed:

(1) that the backpay period should have been cut off in late January or early February 1976 because valid offers of reinstatement were made to both employees; and

(2) that Phillips should be denied all backpay because he was disabled throughout the backpay period and unable to accept reinstatement; or alternatively,

(3) that Phillips' backpay award should be reduced by the amount of disability payments Phillips had received from the State of California; and

(4) that the backpay due both employees be denied or reduced because both had failed to seek diligently for other employment.[1]

A hearing was held before an Administrative Law Judge to establish the amount of the backpay award. The ALJ issued a decision rejecting Canova's defenses except that he reduced Phillips' backpay award by the amount he had received as permanent disability compensation. Both Canova and the General Counsel filed timely exceptions to the ALJ's decision. In addition to the defenses raised in answer to the backpay specification, Canova asserted that he had been denied due process by the revocation of a subpoena for certain documents of the California Employment Development Department and by the ALJ's refusal to continue the hearing and issue a subpoena for a deposition transcript in the files of the California Workers' Compensation Appeals Board. The General Counsel excepted to that part of the ALJ's decision deducting Phillips' permanent disability compensation from his backpay award.

On April 30, 1982, the Board issued a supplemental decision and order affirming the ALJ's findings and conclusions and adopting his recommended order, with one modification. The Board found that Phillips' award should not have been reduced by the amount of his permanent disability compensation. Accordingly the Board ordered Canova to pay $12,744.01 plus interest to Phillips and $7,953.26 plus interest to Davis.

Canova now petitions this Court to review the supplemental decision and order of the Board, asserting all defenses and exceptions alleged below. The Board cross-petitions for enforcement of its order.

*Discussion*

I.

The Subpoena Decisions

Canova had subpoenaed records of the California Employment Development Department concerning both employees' efforts to seek interim employment during the backpay period. The Employment Development Department petitioned the Board to revoke the subpoena and the Board complied. In attempting to support its contention that Phillips was permanently disabled throughout the backpay period, Canova had also subpoenaed Phillips and requested that he produce all documents relating to the hearings on his workers' compensation disability claims. In cross-examination Canova's counsel learned that Phillips had been deposed for that hearing but did not have a copy of the deposition. Canova requested a subpoena allowing Canova to obtain a copy from the California Workers' Compensation Appeals Board or, in the alternative, requested that the record be kept open until the deposition could be obtained. The ALJ refused both requests.

*A. Revocation of the Subpoena to Employment Development Department*

The Employment Development Department petitioned to have the subpoena of its records revoked on the basis of a statutory privilege contained in Cal.Unemp.Ins.Code §§ 1094, 2111 (Deering 1983).[2] California

---

**1.** Canova argues that both employees' backpay should be reduced because both engaged in picketing of Canova in early 1976 and therefore they were not available for work. Picketing does not, however, negate an employee's right to backpay so long as he makes "reasonable efforts to locate suitable interim employment." *NLRB v. Madison Courier, Inc.,* 472 F.2d 1307, 1320 (D.C.Cir.1972). Canova also claims that Phillips' and Davis' backpay should be reduced by the amount of strike benefits received during picketing. The ALJ found, however, that no evidence was introduced that Phillips ever

received such benefits. The ALJ did deduct two weeks' benefits from Davis' backpay on the basis of his testimony that he received *some* benefits. We cannot say these actions were error.

**2.** Section 1094 provides in relevant part that "the information obtained in the administration of this code ... shall not be open to the public, nor admissible in evidence in any action or special proceeding, other than one arising out of the provisions of this code." Section 2111 makes it a misdemeanor for an Employment

has a policy of keeping the records confidential to ensure truthful reporting on the part of the employee. Canova contends that the Board's revocation of the subpoena at the instance of the Employment Development Department deprived it of evidence relevant to whether Phillips and Davis sought interim employment.

The Board's decisions regarding enforcement of subpoenas are discretionary. *NLRB v. Adrian Belt Co.,* 578 F.2d 1304, 1310 (9th Cir.1978). In exercising that discretion, however, the Board must comply as far as is practicable with the rules of evidence applicable in federal courts. Thus, unless the special characteristics of an administrative hearing require otherwise, the Board may revoke a subpoena only if to do so would be proper in federal district court. *General Engineering, Inc. v. NLRB,* 341 F.2d 367, 374 (9th Cir.1965). Such revocation generally requires a valid evidentiary objection to the material sought under the subpoena. *NLRB v. Seine & Line Fishermen's Union,* 374 F.2d 974, 980 (9th Cir.), *cert. denied,* 389 U.S. 913, 88 S.Ct. 239, 19 L.Ed.2d 261 (1967).

This case is governed by *NLRB v. Adrian Belt Co.,* 578 F.2d 1304 (9th Cir. 1978), wherein this court upheld the revocation of a subpoena for California unemployment and disability records. The state agency subject to the subpoena had invoked the same statutory privilege under litigation in the present case. This court held that the claimed privilege "may constitute a valid reason for the Board to revoke or decline to enforce a subpoena." 578 F.2d at 1310. The *Adrian Belt* court also found that the subpoenaed material was of minimal probative value and that the employers were not prejudiced by their inability to obtain the records. *Id.*

The Board acted within its discretionary power in revoking the subpoena. It did so pursuant to the same statutory privilege deemed in *Adrian Belt* to be a proper basis for revocation.[3] Further, the Board found, as in *Adrian Belt,* that the material would have been of small probative value and that Canova was not significantly prejudiced by the revocation.

Canova sought to use the records as evidence of lack of diligence in seeking interim employment. As the Board determined, however, those records would only show what efforts the employees actually reported to the Employment Development Department and not necessarily what was actually done. This evidence would have had its most significant value in impeaching the testimony of the employees concerning their efforts in seeking employment. Canova had in its possession Board compliance documents and statements made by the employees concerning the job searches that contained evidence analogous to the Employment Development Department reports. Given Canova's opportunity to cross-examine Phillips and Davis on the basis of these materials, Canova was not prejudiced by the revocation.

### B. Failure to Issue the Subpcena to Workers' Compensation Appeals Board

When Canova found Phillips did not have the deposition taken during the Workers' Compensation Appeals Board proceeding, Phillips' attorney in that proceeding was contacted. The attorney was able to produce ten pages or roughly twenty percent of that deposition. These pages were given to Canova's counsel. Canova's counsel stated that these pages contained relevant material and indicated that the entire deposition would be very probative on the issue of Phillips' disability. Counsel did not, how-

---

Development Department employee to disclose the information except as provided in § 1094.

**3.** Canova argues that *Marine Welding & Repair Works, Inc. v. NLRB,* 492 F.2d 526 (5th Cir. 1974), supports a different result. That case is distinguishable, however. In *Marine Welding* the statute under which privilege was claimed provided only that the material not be "opened to public inspection." 492 F.2d at 530. Here, the California statute also states that the records may not be used as "evidence in any action or special proceeding" other than one arising under its provisions. Cal.Unemp.Ins. Code § 1094. Further, the *Adrian Belt* court was aware of and cited *Marine Welding* in its decision while reaching a different result.

ever, make any use at the hearing of the pages produced.

■ Canova requested a subpoena to the Workers' Compensation Appeals Board to obtain the deposition. The ALJ refused. The National Labor Relations Board contends that whether to issue a subpoena is a discretionary decision. We find no authority for such a contention. Section 161(1) of the Labor-Management Relations Act and the regulations promulgated to clarify procedures under that section give the ALJ or Board discretion in revoking subpoenas but do not provide for discretion in issuing subpoenas. 29 U.S.C. § 161(1) (1976). The regulations provide that a subpoena request during a hearing should be made to the ALJ who "shall" issue the subpoena. 29 C.F.R. § 102.31(a) (1982). This language indicates that the ALJ must issue a subpoena upon request. *See Lewis v. NLRB,* 357 U.S. 10, 14, 78 S.Ct. 1029, 1031, 2 L.Ed.2d 1103 (1958). Refusal to issue a subpoena may not, however, be grounds for refusing to enforce a Board order if the action was not prejudicial to the requesting party. *NLRB v. Seine & Line Fishermen's Union,* 374 F.2d at 982 n. 10; *NLRB v. Central Oklahoma Milk Producers Association,* 285 F.2d 495, 498 (10th Cir.1960).

■ The ALJ based his refusal to issue a subpoena to the Workers' Compensation Appeals Board on three grounds tending to show that Canova would not be prejudiced by the refusal. First, both the ALJ and Canova's counsel assumed that the Workers' Compensation Appeals Board would assert the same statutory privilege asserted by the Employment Development Department. It appears that the statutory privilege and prohibition against disclosure apply to disability records as well as unemployment records. *See Adrian Belt,* 578 F.2d at 1310; *Richards v. Superior Court,* 258 Cal.App.2d 635, 65 Cal.Rptr. 917, 919–20 (1968). Therefore, the ALJ may have issued the subpoena only to revoke it once the Workers' Compensation Appeals Board petitioned for revocation on the basis of privilege. Second, the deposition was one Phillips had given in the disability proceeding. It would contain only Phillips' knowledge concerning his physical condition. Although this information would be relevant to disability, it is not necessarily probative of Phillips' actual condition. Third, Phillips had already testified and been cross-examined extensively about his condition and Canova had presented expert testimony through Dr. Reiswig on Phillips' condition. Canova also had another doctor's report from which to work. Further, Canova's counsel had a part of the deposition, which he stated was relevant, but made no use of that portion in cross-examining Phillips.

■ We note that Canova and its workers' compensation insurance carrier were parties to the proceeding on Phillips' Workers' Compensation proceeding in which the deposition was taken. If Canova did not have a copy of Phillips' deposition, it should have requested the deposition from its carrier or the carrier's counsel. This course would not have placed the Workers' Compensation Appeals Board in the difficult position of balancing its statutory duty against the mandate of an NLRB subpoena. Although the ALJ should have issued the subpoena and awaited a petition to revoke, we hold that Canova was not prejudiced by the failure to issue the subpoena; thus we will not refuse enforcement of the Board's order on that basis.[4]

4. Canova also complains of the ALJ's refusal to continue the hearing and allow counsel time to obtain the deposition. "Whether to grant or deny a continuance in a case ... is committed to the sound discretion of the Administrative Law Judge ..., and a decision on such a question cannot be reversed in the absence of a showing that such discretion was abused." *NLRB v. Glacier Packing Co.,* 507 F.2d 415, 416 (9th Cir.1974). The ALJ did not abuse his discretion in this case. Having determined not to issue a subpoena to the Workers' Compensation Appeals Board, there was no reason to continue for that reason. Further, the record shows that counsel for Canova had no alternative source in mind for obtaining the deposition other than the Workers' Compensation Appeals Board. Finally, the ALJ proposed a procedure by which Canova could have had the deposition added to the record after the hearing if Canova were able to obtain it. We uphold the ALJ's refusal to continue on the basis of the

## II.

### Phillips' Permanent Disability Award

O.D. Phillips suffered three job-related back injuries in 1975 while employed by Canova. In 1977, Phillips filed workers' compensation claims for the 1975 injuries. The California Workers' Compensation Appeals Board awarded Phillips $5770.25 in permanent disability compensation. Canova contends that this amount should be deducted from Phillips' backpay award.

■ The issue of whether Phillips' permanent disability award should be deducted from his backpay award is one of law and thus outside the provisions of 29 U.S.C. § 160(e) & (f) (1976) requiring deference to Board determinations. This court may freely review determinations of issues of law by the Board. *See NLRB v. Mercy Peninsula Ambulance Service,* 589 F.2d 1014, 1019 n. 8 (9th Cir.1979).

■ The Board has ruled that only those workers' compensation awards that are identifiable as compensation for lost wages during the backpay period may be deducted from a backpay award. *American Manufacturing Co.,* 167 N.L.R.B. 520, 523 (1967). An award which is reparation for permanent physical injury, however, is not compensation for loss of wages during a particular period and is not deductible. *Id.* Canova does not dispute this recitation of the law, but argues that Phillips' award was for both lost earnings and physical injury.

The California Supreme Court has ruled that the primary purpose of the California permanent disability compensation "is to compensate diminished ability to compete in the labor market." *Mercier v. Workers' Compensation Appeals Board,* 16 Cal.3d 711, 129 Cal.Rptr. 161, 164, 548 P.2d 361, 364 (1976). In *Russell v. Bankers Life Co.,* 46 Cal.App.3d 405, 120 Cal.Rptr. 627, 633–34 (1975), the court addressed the distinction between permanent and temporary disability payments:

> precautionary measures taken and the unlikelihood at the time of the ruling that the deposition could be obtained by issuance of the sub-

temporary disability payments are a substitute for lost wages during the temporary disability period, while permanent disability is for permanent bodily impairment and is designed to indemnify for the insured employee's impairment of future earning capacity or "diminished ability to compete in the open labor market."

120 Cal.Rptr. at 634 (citations omitted).

■ Because the California courts do not consider awards under the California permanent disability scheme as payment for past lost wages, we agree with the Board that Phillips' award for his permanent disability should not be deducted from his backpay recovery.

## III.

### The Board's Findings of Fact

Canova requests review of the Board's findings of fact regarding when Canova made valid offers of reinstatement, when Phillips became permanently disabled and whether both employees diligently sought other employment. The Board's findings as to these issues "will be overturned on appeal only if the record, considered as a whole, shows no substantial evidence to support the Board's findings." *NLRB v. United Brotherhood of Carpenters and Joiners of America, Local # 1913,* 531 F.2d 424, 426 (9th Cir.1976) (citing *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); 29 U.S.C. § 160(e) (1976)).

■ The substantial evidence standard is a nebulous one; the Supreme Court has stated, however, that "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). Further, this court must examine the entire record and may not limit its consideration to supporting evidence while excluding contradictory

poena. It was within the ALJ's discretion not to delay further the backpay awards.

evidence. *Stephenson v. NLRB,* 614 F.2d 1210, 1214 (9th Cir.1980). We affirm each of the Board's findings because each is supported by substantial evidence in the record.

### A. The Offers of Reinstatement

Canova contends that it made offers of reinstatement to both Phillips and Davis in January and February 1976 and that their backpay liability ceased when the employees did not return to work. An employer may toll its backpay liability by offering reinstatement to employees improperly dismissed, but "a full and unconditional offer of reinstatement to the employee's former position is required." *Oil, Chemical & Atomic Workers International Union v. NLRB,* 547 F.2d 598, 601 n. 3 (D.C.Cir.1976) (emphasis omitted), *cert. denied,* 429 U.S. 1078, 97 S.Ct. 823, 50 L.Ed.2d 798 (1977); *Hydro-Dredge Accessory Co.,* 215 N.L.R.B. 138 (1974). Canova does not dispute this requirement but alleges that it was met by two separate offers: one orally given by Canova General Manager William Smith and one by letter to the Union dated February 1, 1976. The evidence supporting Canova's assertions of valid offers of reinstatement consists of testimony by Mr. Smith and the February 1 letter itself.

Smith testified that on January 28, 1976 he told Phillips that a letter would soon be sent (presumably the February 1 letter) which would offer Phillips and Davis unconditional reinstatement. He then offered both the chance to "return to work unconditionally." Contrary to Canova's claim that this testimony was "unrefuted," Phillips testified that about this time in January 1976 Smith offered him reinstatement but without seniority. Phillips reported other conversations with Smith in which Phillips was offered reinstatement without seniority, holidays or vacation but only if Phillips signed a statement that he had quit. Further, the February 1 letter alluded to by Smith did not contain an unconditional offer, thus undercutting Smith's testimony.

The letter of February 1, 1976 outlined Canova's position regarding the employees, including Phillips and Davis, "who voluntarily walked off their jobs" and stated that those employees would be reinstated "provided work for which they are qualified is available and permanent replacements have not been hired." Referring to Phillips and Davis the letter stated, "The Employer has no policy prohibiting re-hiring former employees who voluntarily quit their employment. Therefore, Mr. Phillips and Mr. Tim Davis are similarly urged to report for work." *Id.* This letter clearly did not offer unconditional reinstatement but only rehiring on the condition that work was available and no replacement had been hired. The letter is ambiguous as to the status of the employees upon return to work, but "rehiring" connotes loss of seniority and accrued benefits. There was substantial evidence to support a conclusion that this letter did not toll the backpay liability. Further, the ALJ, being in a position to determine credibility of the witnesses, could reasonably have credited Phillips' testimony over Smith's and determined that no unconditional oral offer was made in late January.

### B. Phillips' Permanent Disability.

Canova claims that Phillips should be awarded no backpay because he was permanently disabled from the time of his discharge and was unable to accept reinstatement had it been offered. Canova rightly contends that, absent unusual circumstances not here present, an employer is not liable for backpay during periods that an improperly discharged employee is unavailable for work due to a disability. *See American Manufacturing Co.,* 167 N.L.R.B. 520, 522 (1967). The ALJ and Board found, however, that the backpay period for Phillips was not tolled until November 15, 1977 when Phillips was declared permanently disabled and unable to continue in a job requiring heavy lifting.

Phillips' disability arose from three job-related back injuries sustained in 1975 while Phillips was employed by Canova. The last, on September 11, 1976 caused Phillips to be laid off work for the rest of

that month under the care of a local physician, but the following month he returned to his normal duties at Canova where he continued to work until his disputed discharge. Subsequent to his discharge, Phillips obtained interim employment as a driver at Antonini Brothers. His duties included lifting and moving comparable to work he performed at Canova. In 1977 Phillips initiated a series of workers' compensation claims for permanent disability payments based on the back injuries. On November 15, 1977 Dr. Gregory Bard examined Phillips in connection with the claims and concluded that Phillips' condition was stationary and that he could not engage in work involving repetitive heavy lifting, twisting or bending. Dr. Bard did not specify, however, exactly when Phillips became disabled.

On March 8, 1978, Dr. Richard Reiswig, a chiropractor, examined Phillips in connection with the disability claims at Canova's request. Dr. Reiswig concluded that Phillips was permanently disabled and that, given the opportunity, he would not have allowed Phillips to return to work in September 1975. Dr. Reiswig also concluded that Phillips' condition had worsened since the original injury. Based on Dr. Reiswig's opinion, Canova asserts that Phillips was unable to accept reinstatement and thus entitled to no backpay from the time of his discharge.

The ALJ found that Dr. Reiswig's reports were not dispositive of the issue of disability. The ALJ considered more significant the fact that Phillips returned to work at Canova after his injury and performed comparable work at interim employment. Based on this evidence, the ALJ and the Board found that Phillips' injury was not so disabling as to disqualify him from reinstatement rights at Canova at least until November 15, 1977 when he ceased work as a driver.

We conclude that this finding was supported by substantial evidence given that Phillips was capable of performing and did perform his duties at various times between the injury and the November 15, 1977 examination.

*C. Phillips' and Davis' Search for Interim Employment.*

Canova contends that neither Davis nor Phillips diligently sought to mitigate backpay by seeking employment subsequent to their improper discharge. An employer may properly have its backpay liability reduced by a "clearly unjustifiable refusal to take desirable new employment" on the part of the employee. *Phelps Dodge Corp. v. NLRB,* 313 U.S. 177, 199–200, 61 S.Ct. 845, 854–855, 85 L.Ed. 1271 (1941). The employee is held, however, only to " 'reasonable diligence' in seeking comparable employment", *NLRB v. Mercy Peninsula Ambulance Service,* 589 F.2d 1014, 1018 (9th Cir.1979), and success is not the measure of sufficiency; only an "honest good faith effort" is required. *Heinrich Motors, Inc. v. NLRB,* 403 F.2d 145, 149 (2d Cir.1968) (quoting *NLRB v. Cashman Auto Co.,* 223 F.2d 832, 836 (1st Cir.1955)).

Although it appears that Phillips succeeded in finding interim employment only in the third and fourth quarters of 1976 and 1977, he testified that he also signed up with the state unemployment office and on the union out-of-work list and visited the union office weekly seeking work. Further, he testified to a constant search for employment in newspaper ads and personal visits and applications to trucking firms in the area whenever he was not employed.

Davis testified that he signed up with the state unemployment office and the union out-of-work list and checked with the union periodically. He also visited and applied at other employers' offices in the area in trucking and other fields and diligently checked the want ads. Davis actually obtained interim work in the first, third and fourth quarters of 1976. In October 1976 he began a part-time job which became full-time in May 1977. Davis held that job for the rest of the backpay period. There is substantial evidence in the record to support a finding that Davis and Phillips diligently sought interim employment.

*Conclusion*

Because we find the Board correctly rejected Canova's defenses to the backpay specification, the Board's order is enforced.

